Date signed August 15, 2005



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore**

| | |
|---|---|
| In re: : | |
| : | Case No.: 05-17645 |
| **Trittye Collins Fugett,** : | Chapter 13 |
| : | |
| **Debtor.** : | |

### MEMORANDUM OF DECISION

A hearing was held on July 20, 2005 to consider the Debtor's Motion to Sell Free and Clear of Liens (the "Motion to Sell") and the objection thereto filed by Eastern Savings Bank, FSB. At the conclusion of the hearing, the parties were permitted to submit post-hearing memoranda addressing what interest, if any, the bankruptcy estate has in real property titled solely in the name of the Debtor's non-filing spouse. Both parties filed post-hearing memoranda. The court finds that the pleadings adequately set forth the parties' positions and that an additional hearing would not aid the decisional process. For the reasons set forth in this Memorandum of Decision, the Debtor's Motion to Sell is denied.

**I. BACKGROUND**

This case was commenced on April 4, 2005 upon the filing of a petition under Chapter 13

of the United States Bankruptcy Code.[1]  On June 24, 2005, Debtor filed the instant Motion to Sell seeking permission to sell real property located at 1 Hollyford Road, Cockeysville, Maryland 21030 (the "Property").  The Motion to Sell states that Debtor has entered into a sales contract for the property in the amount of Two Million One Hundred Thousand Dollars ($2,100,000.00), which, if approved, would be sufficient to pay the first mortgage debt held by Eastern Savings Bank in the approximate amount of $600,000.00 and the second mortgage debt held by Eastern Savings Bank in the approximate amount of $55,000.00.  Additionally, sufficient proceeds would be generated from the sale of the Property to provide for the payment of any other liens on the real estate and the balance of allowed claims filed by unsecured creditors in the Debtor's bankruptcy case.

An objection to the Motion to Sell was filed by Eastern Savings Bank, FSB (the "Bank"). The objection asserts that the Debtor has no ownership interest in the Property, as evidenced by a Note and Refinance Deed of Trust dated November 29, 2000 between Debtor's husband, Anthony Fugett, and the Bank.  The Bank avers that Mr. Fugett, solely, is also indebted to the Bank pursuant to a Second Note and Deed of Trust dated March 29, 2002 in the original principal sum of $100,000.00.[2]  The Bank maintains that the "Debtor is not a party to, did not execute, and is not obligated on either loan."  Nor is the Debtor a party to either of the Deeds of Trust.  Additionally, the Bank states that it sold the Property at a foreclosure sale to a Third Party

---

[1] The Debtor commenced this proceeding *pro se* and filed her Schedules, Statement of Financial Affairs and proposed Chapter 13 plan in proper person.  Subsequently, on June 24, 2005, Charlene Wilson, Esquire entered her appearance on behalf of the Debtor and on August 2, 2005,  S. D. Raysor-Taylor, Esquire entered her appearance for the Debtor, thereby replacing Ms. Wilson as counsel for the Debtor.

[2] The two deeds of trust and the title deed to the Property are attached as exhibits to the Bank's objection to the Motion to Sell.

Purchaser on April 4, 2005 for a sum sufficient to pay all liens encumbering the Property.[3] The foreclosure sale was ratified by Order of the Circuit Court for Baltimore County on July 8, 2005. For these reasons, the Bank requests that the Motion to Sell be denied.

At the hearing held on July 20, 2005, the parties agreed that the foreclosure sale occurred several hours after the filing of Debtor's bankruptcy petition and the Bank admitted to proceeding with the foreclosure after being notified, via facsimile, of Debtor's filing for bankruptcy on the morning of April 4, 2005. However, the Bank argued that Debtor had no interest in the Property sufficient to invoke the protection of the automatic stay pursuant to 11 U.S.C. § 362(a). Accordingly, the Bank proceeded with the foreclosure and subsequent ratification of the foreclosure sale without first obtaining relief from the automatic stay from this court.[4]

---

[3] A search of the court's electronic case filing system reveals that Debtor's husband was a debtor in his own Chapter 11 proceeding (Case No. 04-22449-JFS) a few months prior to the commencement of Debtor's Chapter 13 case. The schedules filed under penalty of perjury in Mr. Fugett's case testify that he is the sole owner of the Property. Additionally, a review of the docket report in Mr. Fugett's case indicates that the Bank filed a motion for relief from stay on August 24, 2004, to which a Consent Order Modifying Motion For Relief From Stay (the "Consent Order") was entered on November 12, 2004. The Consent Order terminated the automatic stay regarding the Bank's interest in the Property and further provided that the Bank shall forebear, for a period of four months, from exercising its rights and remedies against the Property "to enable Debtor to payoff Movant in full, by either refinancing or selling the Property." In the event that Mr. Fugett did not pay the Bank in full within four months, the Consent Order allowed the Bank to automatically, and without further order of the court, enforce its lien interests in the Property, "including exercising its right of foreclosure." Mr. Fugett's case was dismissed on January 7, 2005 upon motion of the United States Trustee.

[4] At the hearing, the Bank informed the court that exceptions to ratification were taken challenging the adequacy of the sale price, however, the exceptions were denied by the Circuit Court for Baltimore County. The Order Denying Exceptions To Sale is attached as Exhibit C to the Bank's objection to the Motion to Sell.

Debtor, in effect, acted as her own counsel at the hearing.[5] Debtor informed the court that she and her husband were legally separated and pursuant to a Separation Agreement entered into by Debtor and her spouse, Debtor was given possession of the Property for a specified period of time.[6] Debtor relied on this Separation Agreement, which was not produced at the hearing, to argue that she has sufficient interest in the Property to invoke the automatic stay of 11 U.S.C. § 362(a) and to allow her to sell the Property through a private sale. Debtor also asserted that based upon her status as an employee of the State of Maryland, she is required to file a disclosure statement with the State listing all of her property. Allegedly upon the advice of an attorney for the State, Debtor disclosed her "interest" in the Property on her disclosure statement because she was advised that any property owned by one spouse can be attributed to the other spouse. Debtor also referred to family law principles providing that property acquired during one's marriage becomes marital property. (No specific statutory provisions or case citations were provided by the Debtor at the hearing.) Lastly, Debtor argued that she is not looking to continue residing in the house. Rather, she is seeking to consummate a contract of sale entered into by the Debtor's spouse prior to the filing of Debtor's bankruptcy petition. Debtor asserted that such sale would generate greater proceeds than the proceeds generated from the foreclosure sale.

After hearing from both parties at the hearing on July 20, 2005, the court took the matter

---

[5] In the post-hearing memorandum submitted by the Debtor, counsel for the Debtor refers to Debtor's testimony at the hearing on July 20, 2005. To make the record clear, the court notes that Debtor did not take the witness stand at the hearing or otherwise testify under oath. Rather, Debtor simply presented arguments on her behalf to the court.

[6] The court notes that the Settlement Agreement referred to by the Debtor is dated November 30, 2005, less than three weeks following entry of the Consent Order between Mr. Fugett and the Bank in Mr. Fugett's bankruptcy case.

under advisement and allowed the parties to submit post-hearing points and authorities.

## II. ISSUE

The issue presented to the court is whether the Debtor had sufficient legal or equitable interest in the Property, as of the petition date, to invoke the protections of 11 U.S.C. § 362(a). If the court determines that Debtor possessed sufficient interest in the Property on the date of filing her bankruptcy petition, then the foreclosure conducted by the Bank, and the subsequent ratification, are a nullity and the court will further consider Debtor's Motion to Sell. However, if Debtor held no interest in the Property as of the petition date, then there is no right of the Debtor to sell the Property.[7]

## III. ANALYSIS

Section 541 of the Bankruptcy Code provides that property of the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," except as provided in subsections (b) and (c)(2). 11 U.S.C. § 541. Section 362(a) stays "any act to create, perfect, or enforce any lien against property of the estate" and "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a). "As with the scope of the automatic stay, the definition of 'property' for purposes of the Bankruptcy Code is broad." *Matter of Pester Refining Co.*, 58 B.R. 189, 192 (Bankr. S.D. Iowa 1985) (*citing In re Wegner Farms, Co.*, 49 B.R. 440, 442 (Bankr. N.D. Iowa 1985)).

In *Culver v. Boozer*, 285 B.R. 163 (D. Md. 2002), the United States District Court for the

---

[7] A finding that Debtor had no cognizable interest in the Property at the time of filing her bankruptcy petition would also lead *a fortiori* to the conclusion that section 362(a) did not stay the foreclosure.

5

District of Maryland addressed the interplay between marital property and the aforementioned provisions of the Bankruptcy Code. Similar to the facts in this case, the debtor in *Culver* filed a Chapter 13 bankruptcy petition hours before a scheduled foreclosure sale of the marital residence. *Id.* at 164. As the subject property was owned solely by the debtor's husband, the foreclosure sale took place despite the filing for bankruptcy by the wife. *Id.* Less than two months after the foreclosure sale took place, the debtor's husband (hereinafter, "husband") filed his own Chapter 13 petition and disclosed his and his spouse's interest in the property. *Id.* at 165. A motion for relief from stay was filed by the foreclosing entity and the parties entered into a consent order granting relief from the automatic stay with forbearance. *Id.* At some point, the husband breached the terms of the consent order and consequently, the foreclosure sale was ratified by the state court. *Id.* In response, the husband filed a complaint in the bankruptcy court to set aside the foreclosure sale asserting that the foreclosure sale was improper because his wife's interest in the property triggered the protections of the automatic stay when she filed her bankruptcy petition hours before the sale. *Id.* The bankruptcy court denied the husband's requested relief and denied the subsequent motion to amend. *Id.* The husband appealed the bankruptcy court's ruling asserting that the court erred by finding that his wife did not have sufficient interest in the property to trigger the automatic stay "by virtue of either: (1) section 8-201 of the Family Law Article of the Maryland Annotated Code; or (2) her actual possession of the property on the date she filed her bankruptcy petition." *Id.*

      In finding that the wife had insufficient interest in the property to trigger the automatic stay, the District Court examined the purpose of section 8-201 of Maryland's Family Law Article in which "marital property" is defined. The District Court quoted an opinion of the Court of Special Appeals of Maryland that determined that "marital property" is a term created by the

6

legislature "to describe the status of property acquired during the marriage, however titled" and that "the only function of 'marital property' is to form a basis for a monetary award." *Id*. at 167 (*quoting Falise v. Falise*, 493 A.2d 385, 388 (1985)).  As such, the District Court determined that "an unvested right to an equitable distribution of marital property is not a legal or equitable interest in that property under section 541 sufficient to invoke the automatic stay." *Id*.  Nor did the District Court find that mere possession of the property by the wife on the petition date is sufficient to invoke the automatic stay.  *Id.*

Debtor argues that her case is distinguishable from the *Culver* decision, alleging that the Separation Agreement granted her an ownership interest in the Property.[8]  Debtor further argues that the determination of whether a debtor holds an interest in marital property is governed by non-bankruptcy law and in this case, Maryland Family Law Article § 8-101, which is entitled "Deeds, agreements and settlements valid."  Specifically, this provision of the Maryland Family Law Article sets forth that "A husband and wife may make a valid and enforceable deed or agreement that relates to alimony, support, property rights, or personal rights."  Md. Code Ann. Fam. Law § 8-101 (2004).  Debtor cites caselaw recognizing the validity and enforceability of such agreements between spouses and distinguishes the facts of her case from those presented in *Culver* because Debtor asserts that she has a vested interest in the Property unlike the debtor in *Culver*.

In the Bank's post-hearing memorandum, it reiterates that the Property is owned solely

---

[8] Debtor attached a copy of the Separation Agreement as an exhibit to her post-hearing memorandum.  The fifth paragraph of the Separation Agreement provides: "The Husband hereby agrees that the Wife shall have exclusive rights of ownership and enjoyment of the property for the period of time from November 30, 2004 through December 31, 2008, without nuisance or interference from the Husband of any kind."

by the Debtor's spouse, who received title to the Property pursuant to a deed dated July 26, 1993. The Bank states that there is no public record of any ownership interest in the Property in favor of the Debtor, nor is there any evidence of a pending divorce proceeding between the Debtor and her spouse. Accordingly, the Bank argues that the facts of this case fall squarely within the holding in *Culver* and that any interest the Debtor may have in the Property arising solely from her marriage is insufficient to invoke the automatic stay of 11 U.S.C. § 362 and bestow upon the Debtor the right to sell the Property as requested by Debtor's Motion to Sell.

Upon consideration of the arguments presented by both sides, the court agrees with the Bank that the holding in *Culver* is directly on point with the facts of this case. While the Debtor attempts to distinguish her case from *Culver* based upon the Separation Agreement, an examination of the Separation Agreement reveals that it did not transfer any ownership interest in the Property to the Debtor. In bankruptcy, property interests are defined by applicable state law. *See Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979). Under Maryland law, with limited exceptions, "an interest in real property may only be conveyed by a document which meets the requirements of a deed and is recorded in the appropriate land records." *In re Reese*, 194 B.R. 782, 789 (Bankr. D. Md. 1996) (*citing* Md. Code Ann., Real Prop. § 3-101 (1996); *Kingsley v. Makay,* 253 Md. 24, 251 A.2d 585 (1969) (title to land does not pass until deed is properly executed and recorded)). In this case, the Separation Agreement signed by Mr. and Mrs. Fugett does not purport to convey an interest in the Property to the Debtor, nor was it acknowledged or recorded as required by Md. Code Ann., Real Prop. § 4-101(a) (2003). Rather, the language used in the Separation Agreement merely agrees that Debtor shall have possession of the Property for a specified period of time. No language granting, conveying, assigning or otherwise transferring title to the Property is set forth in the Separation Agreement. It is not a

document conveying, nor contracting to convey, title.  As in *Culver*, the Debtor's mere possession of the Property and her "unvested right to an equitable distribution" of any marital property is insufficient to convey a legal or equitable interest in the Property.  *Culver*, 285 B.R. at 167.[9]

**IV. CONCLUSION**

For these reasons, the court determines that Debtor has no legal or equitable interest in the Property.  As such, the Motion to Sell filed by the Debtor shall be denied.  An order in conformity with this Memorandum shall be entered forthwith.


cc:     Debtor
        Debtor's Counsel - S. D. Raysor-Taylor, Esq.
        Counsel for Eastern Savings Bank, FSB - C. Larry Hofmeister Jr., Esq.
        Chapter 13 Trustee - Ellen Cosby, Esq.


**End of Memorandum**

---

[9] Even if the document was sufficient to convey a cognizable interest in the Property for purposes of sections 541(a) and 362(a), the facts surrounding such a conveyance may justify anullment of the automatic stay if the conveyance were an intentional fraudulent transfer or otherwise a scheme to employ the filing of a bankruptcy petition in bad faith.  Because this court determines that there was no conveyance created by the Separation Agreement, it is unnecessary for the court to receive evidence and make any factual findings on the issue of bad faith.